M. D. BAXTER v. S. P. WILSON et als.

*Jurors—Challenge—Boundary—Natural Objects—Judgment in the Supreme Court.*

1. A challenge to a juror must be made before the jury is empaneled, and if not made in apt time, it is a matter in the discretion of the trial Judge whether he will set aside the verdict.

2. So where one of the jurors was related to the plaintiff, but no objection was made on this ground until after verdict, the refusal of the trial Judge to set aside the verdict cannot be assigned as error on the appeal.

3. As a general rule, natural objects called for in a deed will govern course and distance, but there are exceptions to the rule, one of which is, where it can be proved that a line was actually run and marked and a corner made, such line will be taken as the true one, although the deed calls for a natural object, not reached by such line.

4. Ordinarily, the number of acres contained in a deed constitutes no part of the description, but where the description is doubtful, it may have weight as a circumstance in aid of the description, and in some cases, in the absence of other definite descriptions, it may have a controlling effect.

5. Where the judgment was rendered in the Superior Court against three defendants, only one of whom appealed, the Supreme Court, upon affirming the judgment, will remand the case, in order that the judgment may be enforced against all of the defendants.

(*State* v. *Perkins*, 66 N. C., 126; *State* v. *Davis*, 80 N. C., 412; *Hartsfield* v. *Westbrook*, 1 Hay., 288; *Sandifer* v. *Foster*, Ibid, 169; *Cherry* v. *Slade*, 3 Murph., 82; *Campbell* v. *McArthur*, 2 Hawks, 33; *Cooper* v. *White*, 1 Jones, 389; *Spruill* v. *Davenport*, Busb., 134; *Reed* v. *Schenck*, 2 Dev., 415; *Rogers* v. *Mabe*, 4 Dev., 180; *Harrell* v. *Butler*, 92 N. C., 20; *McPhaul* v. *Gilchrist*, 7 Ired., 169, cited and approved).

This was an ACTION OF TRESPASS, tried before *Gudger, Judge*, and a jury, at Spring Term, 1886, of CURRITUCK Superior Court.

The plaintiff in her complaint, alleged that she was the owner in fee of the land described in the complaint, and set forth in the accompanying plat.

Beginning at the letter B and runs to Stewart's bridge on the main road; thence with Stewart's run to the letter H on the creek; thence with the run of the creek south 94° east 26 chains; thence north 12° east 44 chains; thence 35° 19 chains to the road, and with the road south 63° east 15 chains; thence north 1° east 12½ chains; thence north 7° west 8½ chains; thence north 60° west 27½ chains; to the first station, containing 189 acres more or less.

Her claim of title under this description is embraced in the boundaries—B, A, H, G, F, E, D, C and back to B.

She complained that the defendants committed the trespass upon that part of her land contained within the boundaries N,

M, E, F, G; by cutting down, working up, and carrying off, a large quantity of cypress timber, in shingles and other forms of timber. That the trespass was committed by the defendants Dough and Leary, who were authorized by the other defendant Wilson, who claimed to own the *locus in quo.*

The defendants admitted that the plaintiff owned the land set forth by metes and bounds in the complaint, but alleged that the boundaries as described did not cover the *locus in quo.*

The following issues were submitted to the jury:

1. Have the defendants trespassed upon the lands of the plaintiff? Answer: They have.

2. What damage has she sustained by reason of said trespass? Answer: $137.40.

3. Did S. P. Wilson authorize Dough and Leary to cut on the lands of the plaintiff? Answer: He did trespass over the line E, F, G, up to the line M, N.

Plaintiff and defendants agree that the line runs as indicated on the plat to the creek at H. The plaintiff contends that the next call, "S. 94° E. 26 chains with the creek," must, in this case, be run to the point G, without regard to course and distance, the evidence being, that it was thus actually run, when the land was divided, as hereafter stated.

The plaintiff contends, that the 26 chains must follow the various courses of the creek and stop at N, where the distance gives out when thus run. The plaintiff introduced one M. J. Ferebee, a surveyor, who states that Tully Bell once owned the land now owned by the plaintiff and defendant Wilson; that after Bell's death, his heirs instituted proceedings to sell the same for a division, and employed the witness to divide it into smaller tracts before a sale. He made the survey of the whole tract, and after establishing the lines on the north side of the main road, as shown on the plat, the ditch running from E on the main road was selected as a division line on the south side of said road, and the line H, G, F, was run from the creek, as the calls in the complaint require, to F on said ditch, thence with the ditch to the road at E., and thence to beginning. Witness stated, that the courses and distances were taken from his field notes of this survey; he stated that the division line E. F. G. on the map, is the actual division line established by him. He stated, that from the point H. on the creek, he actually ran a line 26 chains to a tree on the creek at G, and marked the tree, thence he ran the course stated to F. on the ditch, and thence along the ditch to E on the main road. He stated that the call S. 94° E. from H, on the creek, is a typographical error not found in his notes, and that it is an impossible course.

Witness also stated, that he made no plat at the time, and that the land was sold according to the courses and distances reported by him in his survey, which are the same set out in the complaint. At the sale a Mr. Sanderson bought the tract in controversy, and afterwards conveyed it to the plaintiff.

S. K. Abbott, a surveyor, appointed under order of the Court to survey the land in dispute, stated that the land embraced within the calls set out in the complaint, could not be located otherwise than by making E, F, G, the true division line; that if the line M, N, were taken as the true division line, and the other calls were run out, it will throw the points B, and line B, A, fifteen chains west of the known natural boundary, Stewart's bridge at A. He reversed the line H, G, E, F, beginning at E on the road and running the calls to G on the creek. He then platted the whole survey, and found that the distance from H on the creek to G on the creek was about one-half chain shorter · than 26 chains. He did not actually run it, but calculated the distance. He found no marked tree at G on the creek, but the line F, E, is a ditch.

T. B. Boushall, a practical surveyor, stated that he was called upon to run out the disputed line between plaintiff and defendant; that the defendant Wilson told him that the point E, on the road, thence down the ditch, was a part of the disputed line, but he contended that the ditch should be followed to its beginning, and thence to the creek, but that he ran to the point F on the ditch, and then to the point G on the creek, according to the calls in the plaintiff's deed, as set out in the complaint and shown on the plat.

Neither the plaintiff nor the defendant was a party to the survey and division of the Bell land by the witness, M. J. Ferebee.

His Honor charged the jury, that if Ferebee actually ran and located the line from H, on the creek, to G, and marked a tree at the place G, it was a location of the line, and they should find the line from H, on the creek, to G, on the creek, to be the true line, whether the distance of 26 chains with the creek, reached

from H, to G, or not.   And he also charged the jury, that if he then ran the line from G, on the creek, to F, on the ditch, and thence to E, on the road, the line E, F, G, would be the true line.

He also charged the jury, that if Ferebee did actually run and locate the line spoken of, then they should follow the course of the creek for a distance of 26 chains, and the line N, M, would be the true line.

In this charge defendant claims there is error.

After the plaintiff had passed upon the jury, the defendants' counsel announced, that if any one on the jury was related to the plaintiff by blood or marriage, such juror would object to himself.   One juror who had married the plaintiff's sister, left, and another juror was called in his place.   After the new juror had taken his seat, the same announcement was made by the defendants' counsel.

No one on the jury retiring, the defendant declared himself content with the jury, and the trial went on.   The last juror who came in after the one who objected to himself, was a first cousin to the plaintiff.   He was also connected by marriage with the defendant Wilson, whose father had married the aunt of the juror (mother of plaintiff), and whose nephew had married the sister of the juror.

Upon motion to set aside the verdict of the jury for the foregoing reason, the juror was called and asked if he heard the challenge of counsel.   He replied that " he must have heard the words, but if he did, he forgot for the time that he was a connection of the parties."   He also stated that he was impartial between the parties.

It was also shown that the defendant Wilson knew of the relationship of the juror both to plaintiff and himself; that said defendant was present during the whole progress of the trial, and knew that the juror was serving, and that he made no objection until after the verdict of the jury was returned.

The defendant Wilson is the real defendant in this action. The other defendants are nominal parties and did not defend the action or unite in an appeal.

Defendant Wilson moved for a new trial because of the relationship of the said juror to the plaintiff.

His Honor denied the motion and gave judgment for the plaintiff upon the verdict.

Defendant Wilson appealed to the Supreme Court.

No counsel for the plaintiff.

*Mr. W. J. Griffin,* for the defendants.

ASHE, J. (after stating the facts). After the verdict was rendered, the defendant moved for a new trial, on the ground that one of the jurors was related to the plaintiff. There was no error in the refusal of the Court to allow the motion. A challenge to a juror must be made in "apt time." A challenge made after the jury is empaneled, is not in apt time, and especially so after verdict, and it is a matter of discretion with the Judge whether he will grant a new trial. *State* v. *Perkins,* 66 N. C., 126; *State* v. *Davis,* 80 N. C., 412.

The main question in controversy between the parties, is whether the dividing line between their lands, is the line N, M, or the line E, F, G. The plaintiff insists that the true line between them is E, F, G, because that was the line actually run when the land was divided, and the defendant contends that N. M. must be taken to be the line, because the call from H., as claimed by the plaintiff, is *with the run of the creek,* 26 chains, and the creek being a natural boundary, the line must follow its course and terminate at the end of the distance.

As a general rule, the position contended for by the defendant is correct. It has been so held by several decisions in this State, notably in *Hartsfield* v. *Westbrook,* 1 Hay., 258; *Sandifer* v. *Foster,* Ibid., 236; *McPhaul* v. *Gilchrist,* 7 Ired., 169. But this is not an inflexible rule. It has its exceptions. For instance, when there has been a practical location of the land, as when it can be proved that there was a line actually run and marked, and a corner made, such a boundary will be upheld, notwithstanding a mistaken description in the deed. *Cherry* v. *Slade,* 3 Mur., 82.

The construction has been adopted by our Court, to carry out the intentions of the parties, when it is clearly made to appear; and to effect that object, course or distance will be disregarded, if the means of correcting the mistake be furnished by a more certain description in the same deed, and especially will it be so, when some monument is erected contemporaneously with the execution of the deed. *Campbell* v. *McArthur*, 2 Hawks, 33; *Cooper* v. *White*, 1 Jones, 389; *Spruill* v. *Davenport*, Busb., 134; *Reed* v. *Schenck*, 2 Dev., 415. So it has been held, when the call in a deed for a line, running with the river, though according to the general rule, it must pursue the course of the stream, yet that such a call might be controlled by other calls, as for a line of marked trees, or a visible and permanent course, and a construction given to the words *with the river*, as equivalent to *up the river*, but by no call less certain can it be controlled. *Rogers* v. *Mabe*, 4 Dev., 180. In Indiana, it has been held, in a controversy involving the location of a boundary line, fixed by commissioners of partition, that monuments fixed at the time, and mentioned in the report, will control distances, and that in such a case parol evidence is admissible to explain an ambiguity arising from that omission "to describe the monument at one corner." *Hodge* v. *Sims*, 29 Ind., 574.

And now let us apply the principles announced in these decisions to our case. The plaintiff and defendant, if the witness Ferebee is to be believed, claim the land in dispute, and that lying adjacent thereto, under the heirs of one Tully Bell, who had the land, being a large tract, cut up into smaller parcels, with the view to enhance the price at a contemplated sale. To that end, they employed him as surveyor, to divide the land into smaller tracts before a sale. He stated that he made a survey of the whole tract, and after establishing the lines on the north side of the main road, the ditch running from E on the main road was selected as the division line on the south side of the road, and the line H G F, was run from the corner at H to G, the distance of 26 chains, and he established a corner at G upon a tree,

which he marked as a corner.    He states that the courses and distances were taken from his field notes, and that the line E, F, G, is the actual division line, run and established by him at the time. And the land was sold according to the courses and distances reported by him.    The land to the west of the line, was bought at the sale by one Sanderlin, and sold to the plaintiff; and we take it that the defendant Wilson was the purchaser of the land on the east of the line.    They purchased with reference to this dividing line made by the surveyor Ferebee at the time, and according to the authorities above cited, that must be taken as the true line of division, notwithstanding any uncertainty in the calls of courses and distances, and this is especially so, as in this case the subsequent calls in the original survey, have a more certain description than the line running with the creek, and must therefore control that line.    For instance, the lines called for from the end of the 26 chains on the creek 12° east 44 chains, was run actually to the ditch at F and along the ditch to E on the road, which is a natural object, and was not only selected by the heirs of Bell, under whom both the plaintiff and the defendant claimed, but was admitted by Wilson to be a part of the disputed line. It is true, he contended that the ditch should be followed to its beginning, and thence to the creek, but where was the beginning, and how that might vary the line of division, he did not say, and it is not made to appear.

The next call in the plaintiff's deed, corresponding with the Ferebee survey, is to the main road, another natural object, then down the road 15 chains, and thence by courses and distances around to the beginning.    In looking at the accompanying plat, it will be seen that if N, M, is taken as the true dividing line, the call of 15 chains down the road from the point where the line N, M, strikes it, would terminate about K, and pursuing the calls from that point, it would throw the termination of the distance in the last call 15 chains, beyond the beginning at B. But if the line E, F, G, is taken as the true line, then all the calls in the plaintiff's deed comport with those made by the survey of Ferebee.                    10

And, moreover, the plaintiff's deed running with the boundary established by the Ferebee survey, calls for one hundred and eighty-nine acres, but if the line N, M, should be taken as the line of division, it would lessen the number of acres by nearly one half. "Ordinarily the quantity of acres contained in a deed constitutes no part of the description, especially when there are specifications and localities given by which the land may be located, but in doubtful cases it may have weight, as a circumstance in aid of the description, and in some cases, in the absence of other definite descriptions, may have a controlling effect." *Harrell* v. *Butler*, 92 N. C., 20, and cases there cited ; 1 Greenleaf on Evidence, §301, and cases cited in note to same effect.

After a careful consideration of the question presented by the record, our conclusion is, there is no error. The judgment of the Superior Court is therefore affirmed, and as the judgment below was against all three of the defendants, two of whom did not appeal, the case must be remanded to the Superior Court, that the judgment may be enforced by process from that Court.

No error.                                      Affirmed.