## STATE v. PETER DeGRAFF.

*Indictment—Motion to Quash After Plea— Grand Juror—Petit
Juror, Qualification of—Admission by Prisoner— Caution to
Prisoner by Committing Magistrate—Expert Witness— Com-
parison of Handwritings—Newly Discovered Testimony—New
Trial.*

1. A motion to quash a bill of indictment for the disqualification of a
grand juror, if made before plea, will be granted as a matter of
right, but if made after plea it may be granted or not, in the sound
discretion of the trial Judge; and, in the latter case, if the motion
be declined without the assignment of any reason, it will be
assumed that such discretion was exercised, and no appeal will lie.

2. Where a petit juror, upon being challenged and examined, declared
   that his opinions, adverse to the prisoner, had been founded on
   rumor only, and that, after hearing the evidence, he could render
   a fair and impartial verdict, an exception to the finding of the
   Court that he was impartial cannot be sustained.

3. The fact that an officer pointed his pistol at the accused to effect his
   arrest, advising him to give up, does not render incompetent the
   subsequent admissions of the prisoner, especially since no threats
   or promises were made to induce them, and the conduct of the
   prisoner showed that he had no actual fear of violence.

4. Where, at the commencement of the examination of a prisoner before
   the committing magistrate, the former was " duly warned and told
   that he need not say anything unless he wanted to, and it would
   not be used against him if he did not testify, and it was dangerous
   to go on the stand," etc.: *Held*, that the warning so given was a
   substantial compliance with the requirements of the statute (sec-
   tion 1146 of *The Code*), which provides that the magistrate shall
   inform the prisoner that he may refuse to answer any question put
   to him, and that such refusal shall not be used to his prejudice.
   It is not necessary, in giving such caution, that the exact language
   of the statute should be used.

5. Where a witness, offered as an expert, testified that he had been a
   bookkeeper for many years, was secretary and treasurer of the
   city and, as such, it was his duty to compare handwritings to
   determine which are genuine and which are not, had been in the
   business fifteen years, and that his experience had been such that
   he could compare a paper with one known to be genuine and deter-
   mine the genuineness of the former: *Held*, that the witness was
   properly qualified as an expert and competent, as such, to compare a
   signature admitted to be the prisoner's with one attached to a paper
   found on the person of the deceased.

6. Where a witness testified that he had been, four or five years, Register
   of Deeds, had occasion to examine signatures, was frequently called
   on to prove signatures of deceased persons in the Clerk's office, used
   magnifying glasses to detect erasures, and had such experience that
   he could compare a writing with one known to be genuine and
   determine the genuineness of the former: *Held*, that he was prop-
   erly qualified and competent as an expert to make such comparison.

7. An admittedly genuine signature to an affidavit made by an accused
   person in the case in which he is being tried is a proper criterion
   for the comparison of incriminating writings purporting to be
   signed by him.

44

8. Testimony evoked on the cross-examination of a witness by a prisoner on trial cannot form the ground of an exception, especially when it is immaterial and in no view prejudicial to the prisoner.

9. The granting of a new trial upon newly discovered testimony is, in the absence of gross abuse, within the discretion of the trial Judge, and a refusal to exercise such discretion is not reviewable upon appeal. Such discretion will not be exercised where the new testimony is merely cumulative or only tends to contradict or discredit the opposing witness; hence, where the newly discovered evidence upon which a new trial was asked by the prisoner was that a witness for the State had, before trial, spoken in hostile terms of the prisoner and wished for his conviction, the discretion of the Judge was properly exercised by refusing the motion.

10. Where the facts are not found by the trial Judge and spread upon the record, affidavits of grounds for a new trial cannot be considered in this Court in reviewing the refusal of the motion.

Indictment for murder, tried before *Winston, J.,* and a jury, at August Term, 1893, of FORSYTH Superior Court.

The defendant was convicted and appealed. The exceptions, etc., upon which the appeal was based are stated in the opinion of Chief Justice SHEPHERD.

*The Attorney General,* for the State.

No counsel, *contra.*

SHEPHERD, C. J.: The prisoner was indicted for the murder of one Ellen Smith, and, after his arraignment, moved to quash the indictment, on the ground that one of the grand jurors was a cousin of the deceased and therefore disqualified to participate in the finding of the bill.

In *State* v. *Gardner,* 104 N. C., 739, it is held that, if a motion to quash for the disqualification of a grand juror is made before plea, the prisoner has a right to have the motion granted, but if the motion be made after plea, but before the jury is impaneled, it may be granted or not, in the sound discretion of the Judge; and in such latter case, if the motion is simply declined without the assignment of any reason, it

will be assumed that such discretion was exercised, and no appeal will lie from the ruling. The exception, therefore, to the refusal of the motion is without merit.

Two of the petit jurors were challenged and, after examination, the Court found that they were impartial, and they were sworn. It appears that their opinions, adverse to the prisoner, were based upon rumors only, and they both stated that, after hearing the testimony, they could render a fair and impartial verdict. The exceptions to the rulings of the Court upon the question of indifferency, based upon such examination, cannot be sustained. *State* v. *Ellington*, 7 Ired., 61; *State* v. *Collins*, 70 N. C., 243; Busbee's Digest, 336 and 337.

In the course of the trial certain confessions were offered by the State, and their admission was excepted to because of alleged threats made by the witness on the occasion of the arrest of the prisoner. The witness, Adams, a policeman, testified as follows: "I went to help arrest the prisoner; the Sheriff and two others went along; saw prisoner at the window of Russell's house at about 12 o'clock at night; he pulled the curtain back. I said to the prisoner, 'Peter, you had just as well give up; you may get one of us, but we will get you.' We went in, and I pointed my pistol at the prisoner; prisoner had three heavy pistols and fifty-two rounds of cartridges in a trunk by the bed. After the prisoner put on his clothes he began to make fun of us for coming after him with little popguns (we had Smith & Wesson's pistols). He said, 'Let me show you some pistols,' and he showed us these three large pistols. He rode behind me on a horse to Winston; he was not frightened, nor was he tied. No threats were made to him, and no promises, and his statements were voluntary." The witness, at another stage of the trial, was examined again upon this subject, but his testimony was substantially the same. The witness then testified to declarations made by the prisoner concerning his flight to Roanoke and New Mexico, and his subsequent return to this State.

It is hardly necessary to cite authority in support of the ruling of the Court. The single circumstance of pointing the pistol at the prisoner, in connection with the language of the witness, indicating that it was done only for the purpose of effecting the arrest, very clearly would not have authorized the exclusion of the declarations subsequently made; and especially is this so in view of the conduct of the prisoner, showing that he had no actual fear of violence, and also because of the entire absence of any circumstances whatever that were likely to produce such an apprehension.

It appears that when the officer was on the porch of the house where the prisoner was staying, the owner inquired who it was. It also appears that the prisoner was in the room and heard the remark. The remark was harmless, but, had it been otherwise, having been made in the presence of the prisoner, it was plainly admissible. *State* v. *Ludwick*, Phillips, 401. This exception, like several others, is so trivial that, but for the gravity of the charge, it would be overruled without comment.

Neither is there any force in the objection to the admission of the statements of the prisoner before the committing magistrate. The testimony upon this point is that "he was duly warned—told that he need not say anything unless he wanted to, and it would not be used against him if he did not testify, and it was dangerous to go on the stand," etc. It is well settled that, in cautioning the prisoner, under such circumstances it is not necessary that the exact language of the statute (*The Code*, § 1146) should be used. A substantial compliance is sufficient, and such was the case in the present instance. *State* v. *Rogers*, 112 N. C., 874.

Equally untenable is the objection to the testimony touching the general character of the witness Davis, and the same is true as to the question asked the said witness, whether the prisoner told him where the deceased was at a certain time. The witness gave a negative answer; and, even if the ques-

tion were objectionable (and we do not see that it is), the prisoner could not have been prejudiced thereby.

The State introduced a letter found in the bosom of the dead woman, and introduced Wilson as an expert to prove that the said letter was in the handwriting of the prisoner. Wilson being examined by the Court as to his qualifications as an expert, testified as follows: "Was bookkeeper many years. Am secretary and treasurer of the city. It is my duty as such to compare handwritings to see which are genuine and which are not; to examine checks and drafts; have been in the business fifteen years; I have had such experience in the business of inspecting handwritings that I can compare a paper with one whose genuineness is known and tell if the former paper is genuine." His Honor held that the witness had been properly qualified as an expert, and the prisoner excepted. The witness was then handed an affidavit made by the prisoner in this case, the signature to which was admitted to be genuine, and the witness was permitted to compare the same with the letter, and to give his opinion as to whether the letter was in the handwriting of the prisoner, and the prisoner excepted.

Another witness, J. P. Stanton, was also examined, and gave similar testimony. He testified in reference to his competency as an expert as follows: "Have been four or five years Register of Deeds of the county; had occasion to examine signatures; frequently called on to prove signatures in Clerk's office of dead men's names; used magnifying glass to detect erasures; have had such experience that I can compare a writing with one admitted to be genuine and tell if the latter is genuine." All of the exceptions addressed to the admission of this testimony are so fully discussed in the elaborate opinion of this Court in *Tunstall* v. *Cobb*, 109 N. C., 316, that it is only necessary to refer to it as decisive authority as to the qualification of these witnesses as experts, and in support of the ruling under which they were permitted to

state their opinions, based upon the comparison of the writings in evidence. See also *Yates* v. *Yates*, 76 N. C., 142, and *Fuller* v. *Fox*, 101 N. C., 119.

The testimony as to Ray's leaving after the homicide was evoked by the prisoner upon cross-examination, and cannot form a ground of exception. It seems, however, to have been immaterial, and in no view could it have prejudiced the prisoner.

After the verdict the prisoner moved for a new trial, on the ground of newly discovered evidence, which was to the effect that one Brewer, a witness for the State, had before the trial expressed himself in very bitter terms against the prisoner, stating in effect that he desired his conviction, etc. The affidavit also states that the prisoner did not know of the hostility of said witness until after the counsel had argued the case. It is well settled that the granting of a new trial upon newly discovered evidence is, in the absence of gross abuse, a matter within the discretion of the Court, and that its refusal to do so is not reviewable upon appeal. It is also well established that the Court will not exercise such a discretion where the new testimony is merely cumulative or, as in this case, only tends to contradict or discredit the opposing witness. Therefore, even if the ruling of his Honor were the subject of review, we would have but little hesitation in sustaining it. *State* v. *Starnes*, 97 N. C., 423; *Carson* v. *Dellinger*, 90 N. C., 226; *Brown* v. *Mitchell*, 102 N. C., 347. It may be observed in passing from this exception that there was abundant evidence, besides the testimony of Brewer, to support the conviction of the prisoner, and that the hostility of this witness, if known to the jury, would very probably have had no influence upon the verdict.

The remaining question to be considered grows out of the affidavit of one Hudson, to the effect that two of the jurors who tried the case had on several occasions before the trial expressed the opinion that the prisoner was guilty, and that

the affiant did not inform either the prisoner or his counsel of the fact. It is stated in the motion, but not in the affidavit, that these jurors made a contrary statement on the *voire dire.* His Honor overruled the motion, but found no facts, and it is settled by repeated decisions that where the facts are not found the affidavits cannot be considered in this Court. In *State* v. *Goodwin,* 5 Ired., 401, Chief Justice RUFFIN discussed the question very elaborately and adopted the above conclusion as " unavoidable." In that case the prisoner was convicted of murder, and moved for a new trial, on affidavits tending to show improper conduct on the part of the jury. The Chief Justice said : " It is not in the power of this Court to look into the affidavits, or, at least, to act on them. One would think this must be understood upon a moment's reflection on the nature of the jurisdiction of the Court. In matters of common law it is strictly a Court of errors, and can only review the matters of law. We cannot, therefore, go out of the record, or pay any regard to affidavits, for the evidence forms no part of the record. A record is constituted of the pleadings, the acts of the parties in Court and the acts and doings of the jury and Court thereon. If advantage is sought by any extrinsic matter which occurs at the trial or in the course of proceeding, it must be put in the record *as a fact* or be stated in an exception, and not left to be collected by this Court upon evidence. This evidence is directed exclusively to the Judge who tried the cause, and his determination on it is conclusive. He ought not to state, therefore, the evidence submitted to him, but his judgment as to the fact itself, which the evidence was offered to establish. * * * When, therefore, a motion is made to vacate a verdict for certain alleged causes, the first thing is to ascertain whether the alleged causes really exist, for, until the facts be found, no question of law can arise, and, as this Court is confined to the consideration of the matter of law only, we can in such case do nothing, * * * and, therefore,

acting judicially, we must assume that the application was unsupported in point of fact, though we might in our private judgment think there was evidence before the Judge on which he might or ought to have found the fact" in favor of the prisoner's contention.

In *Rhinehart* v. *Potts,* 7 Ired., 403, the motion for a new trial for gross misconduct of the jurors was based upon an uncontradicted affidavit, and DANIEL, J, in delivering the opinion of the Court, said: "The case sent up here only states (as in the present case) that the Court refused the motion." We do not know upon what grounds the Judge refused the said motion; it may have been because he did not believe the affidavit of Dowdle. The defendant did not pray the Court to give the reason for rejecting the motion, and we cannot see that it was in fact overruled against law. We cannot say there was any error in the judgment of the Judge on this part of the case. We have often stated that this Court cannot act upon affidavits offered in the Court below."

In *State* v. *Smallwood,* 78 N. C., 560, after a conviction for murder, the prisoner made a similar motion, based upon uncontradicted affidavits and the Court, on the authority of the above decisions, held that it would not look into the affidavits. BYNUM, J., in delivering the opinion, said: "They (the Court) only decide upon the record presented to them, and, therefore, if such motion is designed to be submitted to their revision, the facts must be ascertained by the Court below and spread upon the record. That has not been done in this case." This point was recently before the Court in *State* v. *Best,* 111 N. C., 638, in which the authority of the foregoing cases was again recognized and approved, and we think that no rule of practice is better established in this State. The prisoner is required, under this rule, to request a finding of facts, and, if this is refused and there is any phase of the testimony which presents a legal and not merely a discretionary ground for a new trial, it seems that it will

be awarded by this Court. While this requirement of the prisoner may be attended, in some instances, with injustice by reason of his neglect, yet it would seem to be no more than the application of the general principle that all motions and exceptions must, even at the peril of life, be taken in apt time. We cannot, however, forbear repeating the earnest injunction of Chief Justice RUFFIN, that the facts be found in motions of this nature, whether requested by the prisoner or not. In the present case, the Judge, in view of all the circumstances, may have acted wisely, supposing he was vested with discretionary power under the ruling in *Spier* v. *Fulghum*, 67 N. C., 18 (a point which it is unnecessary to decide), or he may have concluded that the affidavit was unworthy of belief, or that no challenge was in fact made to the jurors. *State* v. *Perkins*, 66 N. C., 126; *Baxter* v. *Wilson*, 95 N. C., 137.

However this may be, we are not, under the rule to which we have referred, and which has ever been so rigidly followed, permitted to act upon the affidavit offered by the prisoner. Until the rule is relaxed, the only remedy to be found in a meritorious case, is in the executive department of the government.

After a patient and careful investigation of the record, we have been unable to discover any error in the rulings of the Court, and, in view of the whole testimony, we see no reason for disturbing the verdict.                    Affirmed.