AMY ALLISON ET ALS. v. W. T. KENION.

(Filed 19 November, 1913.)

**Deeds and Conveyances—Marked Corners—Contemporaneous Conveyance—Evidence.**

When the parties to a deed contemporaneously agreed as to a controlling corner which they mark at the time, and describe it in the deed as a certain number of feet from a fixed point, evidence is competent, as between the parties, which tends to establish the corner so marked by them; and such location made contemporaneous with the execution of the deed will control course and distance.

APPEAL by plaintiffs from *Peebles, J.,* at May Term, 1913, of ORANGE.

Civil action involving title to land. It was agreed that the judge should find the facts.

From the judgment rendered, the plaintiffs appeal.

*Frank Nash for plaintiffs.*
*John W. Graham for defendant.*

BROWN, J. It appears from the record that William Allison acquired title in fee simple to a lot of land in Hillsboro, and on 17 May, 1897, conveyed a part of it to E. L. Coley, who conveyed to Forrest in 1899, who conveyed to defendant in 1905. The only dispute between the plaintiffs and defendant is the location of the dividing line between them, the plaintiffs' southern and the defendant's northern line.

The description contained in each of the deeds is as follows: "Commencing at the northwest granite abutment of Eno Railroad bridge, near the Hillsboro Railroad station, and measuring from point north up Occoneechee Street 654 feet on the east side of said street is the *established* northwest corner of said lot."

The plaintiffs contend that a rock buried one foot in the ground and one foot out of the ground is the true corner, and offered evidence to show that after Cooley had written the deed in William Allison's house, he and Cooley went out, placed that

rock where it is now, and told William Allison that the rock was the end of the 654 feet from abutment of bridge, and was southwest corner of Allison's lot. This evidence in due time was objected to by the defendant, and the judge excluded the same. The plaintiffs excepted.

The evidence excluded is as follows:

Amy Allison, having been duly sworn, testified: "I am the wife of William Allison, who is now dead, and one of the plaintiffs in this action. Dr. Pride Jones conveyed this land to my husband (the plaintiff had before this introduced the deed of Pride Jones and wife to William Allison, dated September, 1878). We went there to live the November before the deed was made, and we lived there continuously to the death of my husband; and I have lived there continuously since.

"We cultivated the land in controversy as a garden spot, and after my husband's death I cultivated it as such up to April, 1912, when the defendant, Mr. Kenion, took possession of it.

"I know Mr. E. L. Cooley; he is a business man, and not a lawyer, and is living now, but is out of the State. My husband and I executed the deed to him (the deed from William Allison and wife, Amy, to E. L. Cooley, dated 17 May, 1897, and was duly recorded, had been introduced in evidence by the plaintiff).

"He came to our house the day the deed was executed; we lived on Occoneechee Street, and my husband sold him the lot. He stepped the distance from the abutment of the bridge to the point to which we agreed to sell him, and he said it was 654 feet. The ground from the abutment to the point was very rough, cut up with gullies, and full of bushes. Mr. Cooley came in our house, which was near-by, and wrote the deed, and we signed it.

"We then went out to where Mr. Cooley said the measurement stopped, and he put a rock down there, dug a deep hole and put it, the rock, about one foot in the ground and about one foot out. I asked him if that was the line, and he said it was—'everything was right and straight, and you will have no more trouble with it'; that rock is still there.

"Mr. Cooley moved a house out to the lot he bought from us; put up some outbuildings there, and rented it to some mill peo-

ple, I think. All of the houses were then, and are now south of the line running east from the rock on Occoneechee Street to the river; and we have cultivated up to the rock line until Mr. Kenion interfered in April, 1912.

"Mr. Forrest bought this lot from Mr. Cooley; don't know exactly when .Mr. Forrest had a well dug, and told me that if I could furnish some hands, he would have it dug on the line. I furnished a hand and it was dug on the line running east to the river from the rock ('the line claimed by plaintiff as the true line). .

"Mr. Forrest afterwards sold this lot to the defendant, Mr. Kenion, and he was in possession of it up to the rock line, when, last April, after a measurement by Mr. Webb, the county surveyor, he claimed that the 654 feet ran beyond, north of the rock line, and he took possession of the land in controversy at that time and cultivated it for the year 1912. The annual rental value of this piece of land is $25."

. We are of opinion that his Honor erred in excluding this evidence.

It appears upon the face of the deed that the northwest corner, which is the vital point in this controversy, was *established* by the parties to the Cooley deed at the time that deed was executed, and it is permissible to prove by parol evidence at what particular place that northwest corner was *established* by them.

In *Sherrod v. Battle,* 154 N. C., 353, *Mr. Justice Walker* quotes with approval a clear and succinct statement of the law from the New Jersey Court:

· "In settling a question of boundary, when there is a latent ambiguity in the description contained in the deed, or a doubt as to the true location of the lines, evidence *aliunde* is admissible to show where the lines are.

"Boundaries may be proved by every kind of evidence admissible to establish any other fact. The question of construction is a question of law to be decided by the court upon the terms of the instrument itself, and when no *latent* ambiguity exists, it must be decided without evidence *aliunde;* but a question of

location, or the application of a grant to its proper subject-matter, is a question of fact to be determined by the jury by the aid of intrinsic evidence." *Opdyke v. Stevens,* 28 N. J. Law, 83.

The evidence is admissible upon another ground: It has been held continuously since *Cherry v. Slade,* 7 N. C., 82, that whenever it can be proved that there was a line actually run and marked, and a *corner* made at the time of the execution of the deed, for the purpose of establishing the location of the land, the party claiming under it shall hold accordingly, notwithstanding a mistaken description of the land in the deed.

In commenting upon that rule, *Justice Ashe* says in *Baxter v. Wilson,* 95 N. C., 144: "This construction has been adopted by our Court to carry out the intentions of the parties when it is clearly made to appear; and to effect that object, course or distance will be disregarded, if the means of correcting the mistake be furnished by a more certain description in the same deed, and especially will it be so when *some monument* is erected contemporaneously with the execution of the deed."

The rule is again stated by *Henderson, C. J.,* in *Reed v. Schenck,* 13 N. C., 415, to be: "Parol evidence to control the description of land contained in a deed is in no case admissible, unless where *monuments of boundary* were erected at the execution of the deed. If the description in the deed varies from these monuments, the former may be controlled by the latter."

In *Shaffer v. Gaynor,* 117 N. C., 16, it is held that, "Though parol proof is not, as a rule, admissible to contradict a plain, written description, it is always competent to show by a witness that the parties by a contemporaneous but not by a subsequent survey agreed upon a location of lines and corners different from that ascertained by running course and distance."

This rule, whether wisely or not, has been recognized and applied in an unbroken line of cases in this State since 1819. *Deaver v. Jones,* 119 N. C., 598; *Fincannon v. Sudderth,* 144 N. C., 587; *Elliott v. Jefferson,* 133 N. C., 207; *Higdon v. Rice,* 119 N. C., 623.

This question was last discussed by *Justice Hoke* in *Clarke v. Aldridge,* 162 N. C., 327, where it is held that "Where parties,

with a view of making a deed, go on the land and make a physical survey of the same, giving it a boundary which is actually run and marked, and the deed is thereupon made, intending to convey the land which they have surveyed, such land will pass, at least as between the parties or volunteer claimants, who hold in privity, though a different and erroneous description may appear on the face of the deed." ·

Whatever may be thought at this day of the wisdom of this rule of evidence, it must be admitted that it is thoroughly engrafted upon the jurisprudence of this State.

In line with our precedents, the Supreme Court of Indiana has held that, in a controversy involving the location of a boundary line, fixed by commissioners of partition, *monuments* fixed at the time, and mentioned in the report, will control distances, and that in such a case parol evidence is admissible to explain an ambiguity arising from "the *omission* to describe the·monument at one corner." *Hodge v. Sims,* 29 Ind., 574. This case is cited with approval in *Baxter v. Wilson, supra.*

It is true that an actual survey by a surveyor was not made of the land conveyed by William Allison to Cooley, but what is equally as effective, the two parties themselves went on the land, and Cooley, himself, if the rejected evidence is to be believed, planted the monument at the northwest corner in Allison's presence and with his consent. Cooley, himself, wrote the deed, and this was done contemporaneously with its execution, and the deed so written calls for an established northwest corner.

The plain intention of the parties at the execution of the deed was to convey the land up to that rock which they had planted as a muniment of boundary. This is further manifested by the fact that Allison and the plaintiffs, who are his widow·and heirs at law, occupied and cultivated the land up to the rock from the date of the Cooley deed in 1897 to 1912, when this defendant, who had purchased from Forrest in 1905, for the first time claimed the parcel of land in controversy.

There is another principle of law, in the nature of an estoppel, which may be invoked in behalf of the plaintiffs.

ALLISON v. KENION.

Cooley, the grantee in the deed, wrote the deed, measured and located the land, and planted the monument, and, as long as he owned the land, acquiesced in plaintiffs' possession up to it, as did his grantees.

Having himself surveyed the land, so to speak, under designated lines and corners, marked and established by himself, Cooley and those claiming under him are bound by his own admissions and acts, and cannot be permitted to controvert the legal effect of his own conduct to the prejudice of the plaintiffs, especially after long acquiescence. *Barker v. R. R.,* 125 N. C., 599. It is said in that case:

"There is a clear distinction between cases where the parties themselves have definitely located the land, and where it is merely sought to locate it by outside testimony not in the nature of admissions."

We think this distinction is recognized inferentially in *Massey v. Belisle,* 24 N. C., 177, where the Court says on page 177: "The stakes may be real boundaries when so intended by the parties, but it is a settled rule of construction with us that when they are mentioned in a deed simply, or with no other description than that of course and distance, they are intended by the parties, and so understood, to designate imaginary points. If the facts are true, as testified upon the trial, we think the plaintiff is clearly estopped from denying his location of the land, and, therefore, cannot recover."

In his concurring opinion in the same case, *Chief Justice Faircloth,* while differing as to what constitutes color of title, agrees that the plaintiff, having marked the corners at the time, is estopped to contest his own location of the land.

The case we have is much stronger than that, for here the deed itself contains evidence upon its face that a northwest corner was *established* by the parties, and the parol evidence excluded does not contradict or vary the terms of the description, but only tends to locate the spot where that corner was established.

How far this would avail against a *bona fide* purchaser for value without notice, it is needless to discuss, as this defendant does not occupy that position.

The deed itself put him upon notice that there was an established northwest corner, and the evidence, if believed, shows that William Allison and those claiming under him occupied and cultivated the land continuously to the rock up to 1912.

His Honor having erroneously excluded the evidence offered, his findings and judgment are set aside, and a new trial awarded.

New trial.