Pearson, C. J.
 

 Every deed must speak for itself; and a defective description cannot be aided by parol evidence ; although, in fitting the thing to the description, for the purpose of identifying the subject, such evidence is not only admissible, but necessary.
 

 In respect to
 
 “
 
 marked trees,” a departure from this rule, to a limited extent, has been admitted, and is acted upon in numberless cases ; so as to allow a defective description to be aided and added to, by an implication, based on the known practice of surveyors in making corners. For instance, a call “'south 145 poles to á black-oak, thence east 110 poles, &c.,” is vague and uncertain in respect to the black-oak. We know from the deed, that it is a corner, for at it the course changes, but what black-oak is it ? Unless it stand at the end of the distance, no description is given, and so far as the deed speaks, it may be this, that or another, black-oak. But surveyors always mark “ corner trees” in a particular manner; three chops on the “ coming” and three on the “ leaving line,” and if a black-oak is found marked as a corner, corresponding with the two lines, and corresponding with the date of the deed, that fact, has the effect of aiding the description, andi adding to it, by implication, so as to make it read “ a black-oak,
 
 marked as a corner J
 
 which makes, the description perfect, and establishes the black-oak for a corner, controlling
 
 *203
 
 both course and distance. Surveyors also, mark line trees in. a particular manner, two chops on a side line tree, and two chops coming and leaving on a
 
 “
 
 fore and aft tree,” and although we do not decide that a line, so marked, corresponding with the date of the deed, except in
 
 ancient
 
 deeds and patents, is of itself sufficient to control course and distance, unless it is called for in the deed; yet, it is clear, that snch a line, if found, may aid in fixing a corner, which has been removed, or destroyed; for the marks, so made, on growing trees, according to the custom of surveyors, cannot afterwards be put there or counterfeited, and are treated as facts, in some degree, incorporated into the deed, so as to make a part of the description, by implication, and are thus distinguished from mere parol evidence, resting on “ the slippery memory of man.” So, that where the first line, running from an admitted beginning corner, is established, and there is such a line of marked trees corresponding in age, and with the course called for, running to the third corner, which is also established, the second corner may be fixed by
 
 reversing
 
 the second line, to wit, the line so marked, and the point of intersection with the first line is considered to be the corner, although the distance in the first line may be thereby elongated or shortened. This is assumed to be settled law in
 
 Harry
 
 v.
 
 Graham,
 
 1 Dev. and Bat. Rep. 80. It was decided in that case, that a posterior line could not be reversed, in order, by its intersection with a prior line, to show the corner, unless such posterior line was certain, because, to do so, would be to extend the
 
 distance
 
 of the prior, by the
 
 course
 
 of the posterior line, the chance of mistake resting on the one or the other being equal, it was deemed proper to follow the order in which the survey was made. But the Court say : “ So, if even upon such calls, as this deed contains, a
 
 line of marked trees
 
 was found, by tracing the line back from the post-oak, corresponding with the survey of the three hundred-acre patent, that might carry the other line to the point of intersection, because it would prove an
 
 actual survey,
 
 and be the evidence of
 
 permanent, natural
 
 objects, to show where the black-oak once
 
 *204
 
 actually stood, which, wherever it stood, would be the terminus, and control the
 
 distance
 
 mentioned in the deed.”
 

 The same consideration, based on the practice of surveyors, and the nature of marks made on growing trees, by which the fact of a tree being found marked as a corner, is allowed to aid the description in a deed, by adding to it, the words “ marked as a corner,” applies toa case, where trees arc found marked “ as pointers for it is the practice of surveyors, and a part of their art, to mark a point as a corner in a particular manner, to wit, by blazing three trees, so as to point to the centre spot as the corner, which, from their office, are called u pointers,” and the blazes so made on growing trees, are just as permanent, count age as well, and are as hard afterwards to be put there or counterfeited, as the chops on a corner tree, and are consequently, equally entitled to be treated as facts, incorporated into the deed, so as to make a part of the description, and aid by adding to it the words, “ marked as a corner by pointers.” For instance, a call “ south 145 poles, to a stone, thence east 110 poles, &c.,” is vague and uncertain in respect to the stone; but if the trees are found marked as “pointers,” corresponding with the date of the deed, and especially, if there be also an established line, coming to the point indicated, and a line of marked trees corresponding in age, and with the course, leaving the point; these facts have the effeet of aiding the description, and adding to it, by implication, so as to make it read a stone, “ marked as a corner by pointers,” which makes the description perfect.
 

 It was objected on the argument, that according to this ■mode of reasoning, a
 
 stake,
 
 as well as a
 
 loose
 
 stone, might, by the aid of pointers and marked line trees, be fixed as a corner, so as to control course and distance, which, as was contended, would be in conflict with
 
 Reid
 
 v.
 
 Shenck,
 
 3 Dev. Nep. 65, where a stake is held to be an “ imaginary point.” It is true, in that case, it is held, that where course and distance are given, calling for “ a stake,” it is ordinarily intended by the parties, and should be understood merely to designate an “ imaginary point,” but it is there conceded, that stakes may
 
 *205
 
 be
 
 real boundaries,
 
 and we see no reason why its character, as well as that of a loose stone, may not be fixed as a real boundary by a description, calling for it as a corner, designated by means of pointers, although this part of the description rests on implication ; for, in
 
 Reid
 
 v.
 
 Shenck,
 
 the land in dispute, was a lot in a town, where there were no trees marked, either as corners, pointers, or lino trees, and the question rested on monuments of boundary of a different kind, in respect to which, there was nothing to aid, by implication, the description in the deed. If a rock or a stone pillar, be called for as a corner, and there are no pointers or marked line trees to aid the description by implication, that case decides, there must be some other description given in the deed, so as to identify the particular rock or stone pillar, as a rock “ by the side of a branch,” or with the letter “ C,” for instance, marked on the face of it, or a stone pillar, with a certain inscription, like those erected to mark the boundary between the United States and Mexico, and the difference between monuments of boundary of that kind, and those marked on growing trees, is relied on to distinguish that case from “ the series of cases,” cited by the learned Judge who presided, in the Court below.
 

 In our case, we have an admitted corner to begin at, an established line to fix the corner trees, marked as “ pointers,” and line trees leading off to fix the second course, which line of marked trees, go to another point, where there are also trees, marked as pointers, in an established line of the original tract, and we concur with his Honor, that according to the adjudications of our courts,
 
 these facts
 
 are competent and sufficient to fix the corners, so as to control the distance mentioned in the deed.
 

 We have not relied on the fact, that the call is for a “ stone and a-(a blank) a new corner;” this fact, certainly does not weaken- our conclusion, and, we think, tends to support it, taken in connection with the additional fact, that a black-oak stands at the point, marked as a corner, corresponding in age with the coming and leaving lines; for the description shows
 
 *206
 
 that there was something else at the point, and it is probable, the draftsman being uncertain as to the kind of tree on .which the corner marks were made, left it blank for fear of a mistake; but at all events, the description shows that a
 
 new
 
 corner was then and there made, and agrees that far with the fact, that a black-oak was, then and there found, marked as a corner; so, that there is,, at least, no inconsistency between the description, in the deed, and the facts dehors.
 

 Per Curiam,
 

 Judgment affirmed,