WILLIAM REDMOND et al. v. J. A. MULLENAX.

*Practice—Issues for the Jury—Discretion of Trial Judge—Defective Process, Amendment of—Blank Summons—Grant—Surveyor's Plat—Evidence—Exceptions to Charge.*

1. The trial Judge has power in the exercise of a sound discretion to settle the issues for the jury, and such exercise is not reviewable in this Court, unless the record shows that the form of the issues was such as to preclude the complaining party from having presented to the jury some view of the law arising out of the evidence.

2. Although a summons be informal in some respects, or even defective in failing to contain everything requisite under the statute, yet, if it bears internal evidence of its official origin and of the purpose for which it was issued, its informality and defects may be cured by amendment; but where it is not signed or does not bear a seal, or otherwise show its official character, it is nothing more than a *blank*, and a Judge has no authority to permit to be amended.

3. The original plat of the survey required to be attached to a grant of
land, when issued by the State, is made a part of the grant for the
purpose of indicating the shape and location of the boundary, and
is evidence, though not conclusive, to be submitted to the jury as
to the true shape and location of the land.

4. Only assignments of error made below and founded upon exceptions
submitted in apt time will be considered in this Court.

This is an action to recover land, tried before *McIver, J.*,
and a jury, at Spring Term, 1893, of HENDERSON Superior
Court.

The plaintiffs claimed title under a grant from the State
of North Carolina to one Tench Cox, dated the 25th day of
June, 1796, and *mesne* conveyances down to themselves.

The first call in the Tench Cox grant was: "Beginning
at a poplar in the South Carolina boundary line, and runs
north," etc. It was admitted that the poplar was the begin-
ning corner. The last call but one was: "Thence south
106 chains to a stake in the South Carolina line.". The last
call: "Thence east with the South Carolina line to the
beginning."

The defendant claimed title under a grant from the State
to one Kuykendall, dated the 2d day of February, 1882,
and thence by *mesne* conveyances to himself.

The grant recited that the money to secure the same was
paid into the State Treasury on the 31st day of December,
1881.

The plaintiffs claimed that their southern boundary line
was a direct line from the terminus of the last call but one,
"south 106 chains to the beginning," which would include
the land in controversy.

The defendant claimed that plaintiffs' southern boundary
line was a line running due east from a point on the line of
106 chains to the poplar, the beginning corner of the Cox
grant, which would not include the land in controversy; that
even if plaintiffs' contention as to boundary was correct, he

had been in possession of said land under color of title for more than seven years prior to the commencement of this action.

The plaintiffs tendered the following issues:

" Are the plaintiffs the owners of and entitled to the possession of the land described in the complaint?"

" Where is the southern boundary of the plaintiffs' grant, as described on the plat?"

" Has defendant had such possession of the land by him as to ripen his color of title into a perfect title?"

" Is defendant in the wrongful possession of any part of plaintiffs' land?"

".What damage are plaintiffs entitled to recover?"

The Court submitted the following issues:

" 1. Are the plaintiffs the owners and entitled to the possession of the land in controversy?"   Answer: " No."

" 2. Is the defendant in the unlawful possession of any part of said land?"   Answer: ".No."

" 3. What damage are plaintiffs entitled to recover?"   Answer: " None."

The plaintiffs excepted to the issues submitted.

The plaintiffs introduced in evidence certain Acts of the Legislature of North Carolina from 1803 to 1814, for the purpose of showing that the South Carolina line was not established, as contended, at the time of the issuing of the Cox grant in 1796.   There was evidence tending to show that the land in controversy was west of the termination of the line of 1772.   There was also evidence tending to show that the South Carolina line, as it was understood to exist at the time of issuing of plaintiffs' grant (Cox grant), was a line west from the poplar, to and beyond the line in plaintiffs' grant, and deeds running south 106 chains, being next to the last call in said grant.

. The plaintiffs requested numerous special instructions to the jury, all of which were given by the Court, except the following:

· "If the plaintiffs on the 15th day of January, 1889, applied to the Clerk for a summons, and filed his prosecution bond, and the Clerk issued the summons, even wi hout signing the same, and docketed the case in January, 1889, as shown by the record, this action of the plaintiffs would be sufficient to arrest the running of the statute."

This was refused by the Court, because there was no evidence in support of the prayer asked, the evidence being that a blank summons was taken from the office of the Clerk by Mr. Justice, agent for the plaintiff, which was taken to the office of Mr. Smith, one of the attorneys for the plaintiff, who filled out the summons and bond in his office; that the summons was never, in fact, issued or served.  Plaintiffs excepted.

The Clerk stated that he did not know when the entry on his docket, "Issued January 15, 1889," was made; that his custom was to make such entry when the summons issued. There was evidence that defendant left the State and went to South Carolina 16th of January, for the purpose, as he testified, of putting up tombstones to his child's grave; that he knew nothing about the suit until after his return.

The defendant asked the Court to submit to the jury sundry special instructions, all of which were refused, except the following:

"The original plat in doubtful questions of boundary is evidence of the true shape of the land, and of the intent of the contracting parties as to the location of the lines, and such intent in such cases determines the true location." Plaintiffs excepted.

The defendant testified that he went into the possession of the land in controversy on the 8th day of January, 1879, and had been in the open and continuous possession since said time.  There was no evidence to the contrary.

After the evidence was all in, the plaintiff moved that the Clerk be allowed to sign the summons of the 15th of Janu-

ary, 1889, which motion was refused, upon the ground that the Court had no authority to allow the same, it not being an amendment to the process.

Upon the question of location the Court charged the jury that the rule is, if the beginning is admitted, or proved, and only courses and distances are given, the lines must be run by the course and distance, but if in addition to course and distance natural objects, marked trees, or lines of other tracts, are called for, these, when shown, will control, but if none such can be found then course and distance must control in fixing the boundary line or lines.

"Applying this rule you are instructed that if you find from the evidence that the last course of the Cox grant but one is the chestnut (144 on plat), the course and distance from that point south 106 chains to a stake in the South Carolina line will be controlled by that line as it was recognized and existed in 1776, if found; but if not found course and distance south 106 chains must control, and the southern boundary of the plaintiffs' land will be a direct line from that point to the beginning at the poplar, regardless of course and distance. If you find from the evidence and the instructions given that the Cox grant includes the land in controversy, you will respond Yes to the first issue, unless you shall find the defendant has been in the continuous adverse possession for seven years under color of title before the commencement of this action, and if you so find, you will respond No to the first issue. You are also instructed that this action commenced on the 15th day of May, 1889, and defendant's color of title began February 2, 1882."

Verdict and judgment for the defendant, and plaintiffs appealed.

*Messrs. Justice & Justice,* for plaintiffs (appellants).
*Messrs. T. R. Rickman* and *S. V. Pickens,* for defendant.

AVERY, J.: The Court submitted the three issues usually adopted in actions for possession of land, and there was no error in the refusal to allow the jury to pass upon the more specific inquiries suggested by the plaintiffs. The Court settled the issues in the exercise of a sound discretion, which, in that case, would be reviewable here only on condition that the party complaining could show from the record that the form of the issues was such as to preclude him from having presented to the jury some view of the law arising out of the evidence. *Denmark* v. *Railroad*, 107 N. C., 185; *Boyer* v. *Teague*, 106 N. C., 576; *Emery* v. *Railroad*, 102 N. C., 209; *Bonds* v. *Smith*, 106 N. C., 553. He has not attempted to show that he was deprived, by the ruling excepted to, of the opportunity to enlighten the jury upon the law applicable to the facts, and it is difficult to conceive how he could have done so. "An action is commenced as to each defendant when the summons is issued against him." *The Code*, § 161. Though the paper purporting to be a summons may be informal in some respects, or even defective in failing to contain all that, according to the requirements of the statute, should appear in it, its informality and defects may be cured by amendment if there is evidence upon its face that it has emanated from the proper office and was intended to bring the defendants into Court to answer a complaint of the plaintiff. *Henderson* v. *Graham*, 84 N. C., 496; *Jackson* v. *McLain*, 90 N. C., 64. If the paper bear internal evidence of its official origin, and of the purpose for which it was issued, it comes within the definition of original process, and the broad discretion with which Judges are clothed by section 273 of *The Code* may be freely exercised, subject only to the restriction that the alteration shall not disturb or impair any intervening rights of third parties. *Cheatham* v. *Cruise*, 81 N. C., 343; *Thomas* v. *Womack*, 64 N. C., 657. But, unless there is something upon the face of the paper which stamps upon it unmistakably an official character, it is not a defective sum-

mons, but no summons at all—no more than one of the usual printed blanks kept by the Clerks of the Courts. The seal of the Court is evidence throughout the State of the fact that a paper to which it is attached emanates from the tribunal to which it belongs, and though the Clerk's signature is the prescribed evidence of genuineness as to all process to be served in the county in which his Court is held, yet, if he issue to such county a summons in the usual form, attested by his official seal, but not subscribed, and containing his name only as printed in the body of the paper, the Court has the power, after the defendant has entered an appearance, to amend by allowing the Clerk to sign his name. *Henderson* v. *Graham, supra.* On the other hand, where a summons was issued to an adjacent county, signed by the Clerk of the Superior Court, but not attested by the seal, and served upon the defendant, it was held that, after an appearance by virtue of such service, the Court might, in its discretion, allow the seal to be attached, as it could also to final process upon which property had been sold in another county, and after it had been returned by the officer who sold. *Clark* v. *Helen,* 1 Ired., 421; *Seawell* v. *Bank,* 3 Dev., 279; *Purcell* v. *McFarland,* 1 Ired., 34. The cases cited mark the extreme limit to which this Court has gone in recognizing as valid and perfecting by amendment defective process. We cannot extend the discretion of the Court so as possibly to include a case where counsel obtains from the Clerk a form of summons, fills the blank in the body of it, and, after procuring the signatures of sureties on the undertaking endorsed thereon, places it in the hands of the Sheriff without giving to the Clerk the opportunity to pass upon the sufficiency of the security for costs, as the statute (*The Code,* § 211) requires him to do. The issuance of the summons in such a case is the act of the attorney—not of the Clerk—and the paper is void as process and incurable by amendment. *Sheppard* v. *Love,* 2 Dev., 148. Even between the parties, we cannot, by amend-

ment, give such a paper relation back to the time when, as an unsigned and unattested summons, it issued. The seal, though not required, or the signature, though not imparting authenticity in the county to which the summons issues, is evidence of the fact that the Clerk has approved the prosecution bond or permitted the issuance on a proper affidavit; and when the defendant waives the informality or irregularity by appearing, the curative power of amendment may be invoked, but not when there is nothing upon the face of the paper to give assurance that it received the sanction of the Clerk before it was delivered to the Sheriff to be served. There was no error in the ruling of the Judge that he had no authority to amend the summons. Here, however, the appearance was entered after the service of a second summons of later date and in proper form.

The surveyor is required by the statute (*The Code*, § 2769), upon receiving the entry and surveying its boundaries, to make two fair plats, one of which is to be attached to the grant when issued, and the other filed in the office of the Secretary of State. The original plat is thus made a part of the grant for the purpose of indicating the shape and location of the boundary, and is, of course, evidence, though not conclusive, to be submitted to the jury as to the true shape and location of the land. Even field notes of the original survey of the boundary line between North Carolina and Tennessee, when properly identified, were declared admissible as tending to show the location of that line, when called for in a grant. *Dugger* v. *McKesson*, 100 N. C., 9.

Upon examining the record it does not appear that the plaintiffs excepted to the charge of the Court on the question of the location of the boundary lines, on the ground that it was not sufficiently specific. The abstract propositions set forth in the record are correct statements of the general principles applicable in such cases, and in the absence of such exception, it does not appear that the charge did not embody

more definite instructions directed to the facts in this case. The statement of the case on appeal does not purport to set forth the charge in full. We can only consider assignments of error made below and founded upon exceptions submitted in apt time.    There is                    No Error.