W. H. HIGDON, et al. v. A. F. RICE, et al.

*Trespass Quare Clausum Fregit—Survey—Description in Grant — Mistake in Calls for Course and Distance— Parol Evidence—Plot of Original Survey.*

1. It is a rule of law that deeds and grants shall be so run as to include the land actually surveyed with a view to its execution, and parol evidence is admissible to show that, by mistake of surveyor or draughtsman, the calls for course and distance incorporated in a deed or grant are different from those established by a previous or contemporary running by the parties or their agents.

2. Whenever it can be proved that there was a line actually run by the surveyor and was marked and a corner made, the party claiming under the patent or deed shall hold accordingly, notwithstanding a mistaken description of the land in such patent or deed.

3. While the plot annexed to a survey as provided in Section 2769 of *The Code*, and made a part of the grant for the purpose of indicating the shape and location of the boundary is not conclusive and cannot, of itself, control the words of the body of the grant, yet it is competent, in connection with other

testimony, as evidence of the location by an original survey different from that ascertained by running the calls of the grant.

4. In an action to recover land a certified copy of the original certificate of survey attached to a land grant in the office of the Secretary of State is admissible in evidence to prove, in connection with other testimony, a mistake in a line of boundary in the original grant itself.

CIVIL ACTION, for trespass, tried before *Starbuck, J.*, and a jury, at Spring Term, 1895, of SWAIN Superior Court. There was a verdict for the plaintiffs and from the judgment thereon the defendants appealed.    The necessary facts are stated in the opinion of the Court and in the dissenting opinion of Chief Justice FAIRCLOTH.

*Messrs. Shepherd & Busbee* for plaintiffs.
*Mr. A. M. Fry,* for defendants (appellants).

AVERY, . J:    The questions raised by this appeal are :

1st. Whether it is competent to show by parol testimony that, by mistake of surveyor or draughtsman, the calls for course and distance incorporated in a deed or grant are different from those established by a previous or cotemporary running by the parties or their agents.

2d. Whether, if in any case parol proof is competent and sufficient to be submitted to the jury to show a location different from that determined by following course and distance, the testimony in the case at bar raised a question as to mistake in the calls that it was the province of the jury to pass upon.

Deeds are executed contracts, but do not belong to that class that must be interpreted solely by a consideration of the language of the instrument or what occurs upon its face.    On the contrary, every deed is so far ambiguous as to require extrinsic evidence to " fit the description to the

thing." *Safret* v. *Hartman*, 7 Jones, 199. A defective description cannot be aided by parol testimony, because that would be both to contradict the terms of the deed and to substitute by parol an essential portion of a contract required by the statute, (*The Code*, Sec. 1554), to be in writing. But it is nevertheless competent to correct a mistake in a description by oral testimony tending to show what the parties consented to at the time of executing a deed, for the reason that it is in explanation of what is always so far ambiguous as to require evidence *dehors* the deed to establish it. What was the actual cotemporaneous location of the land? An ordinary deed of bargain and sale is an executed contract between bargainor and bargainee. A grant is of the same nature, differing in the fact that the State is grantor instead of an individual. But no matter which of the two is to be located, we must address ourselves to the consideration of the question what the parties intended by a description, which, *ex necessitate*, requires parol proof to identify the subject matter of the contract. The object in such investigations is to *identify*, by actual location, the land which it was intended by the parties should pass by the conveyance. *Shaffer* v. *Gaynor*, 117 N. C., 15.

The mission of the courts is to enforce the contract embodied in the instrument, and the first step in giving effect to the ambiguous agreement is to ascertain under established rules of evidence what the minds of grantor and grantee assented to at the time. To identify in the sense in which the term has been used by the Court (*Safret* v. *Hartman, supra*) is to show it to be the same subject matter that was agreed upon by the parties.

In *Redmond* v. *Stepp*, 100 N. C., 212, 217, Chief Justice SMITH, for the Court, said, in reference to the location of a grant: "Our inquiry is, What lands were covered by

119—40

the grant *when it was made ?*   If, guided by the instruction given, the jury shall ascertain the recognized line between the States at the period of its issue, and that it was the *intent* of the parties to run to and stop at that line, then such must be the effect, but this intent must be ascertained from the provisions of the instrument and the place of the natural objects, marked trees or adjoining tracts, *as they then existed.*"

It seems to have been conceded that, subject to some not very clearly defined restrictions, it is a rule of law that deeds and patents shall be so run as to include the land actually shown to have been surveyed with a view to its execution.   This general rule is supported by a long and uninterrupted line of authorities extending back to the early history of the State.   *Person* v. *Roundtree,* 1 Haywood 375, (436), (1 Martin, 18) ; *Bradford* v. *Hill,* 1 Haywood, 22 ; *Reed* v. *Schenck,* 2 Dev., 415 ; *Haley* v. *Morgan,* 1 Dev. & Bat., 425, 431 ; *Hough* v. *Horn,* 4 Dev. & Bat., 228 ; *Hauser* v. *Belton,* 10 Ired., 358 ; *Baxter* v. *Wilson,* 95 N. C., 143 ; *Cherry* v. *Slade,* 3 Murphy, 82 ; *Shaffer* v. *Gaynor, supra.*   In order to show the uniformity and consistency of the rulings of this Court on this subject, it is perhaps well to quote and compare the language of its decisions from the earliest period of its history down to the present :

In *Bradford* v. *Hill, supra,* the Court laid down the rule that course and distance must be followed except where a natural boundary is called for and shown, or " when marked lines and corners can be *proved* to have been made at the *original* survey."   *Person* v. *Roundtree* was cited with approval by Chief Justice TAYLOR, in *Cherry* v. *Slade,* 3 Murphy, 882 ; and by Chief Justice RUFFIN, in *Hurly* v. *Morgan,* 1 Dev. & Bat., 425 ; and by Chief Justice PEARSON, in *Hauser* v. *Belton,* 10 Ired., 358.

HIGDON *v.* RICE.

In *Cherry* v. *Slade, supra,* Chief Justice TAYLOR said : " Whenever it can be proved that there was a line actually run by the surveyor, was marked and a corner made, the party claiming under the patent or deed shall hold accordingly, *notwithstanding a mistaken description of the land in the patent or deed.*" In the same opinion the learned Chief Justice, on page 87, sets forth at length the facts in the case of *Person* v. *Roundtree,* as they appear in a note, 2 Haywood, 32, italicizing the statement, *that the grant did not cover any of the land surveyed,* and approving of the ruling that nevertheless his land should be located by cotemporaneous survey entirely off the land covered by the grant.

In *Hauser* v. *Belton, supra,* Chief Justice PEARSON said : " In the leading case, *Person* v. *Roundtree,* 1 Haywood, 378, the course of the first line was north from a creek so as to put the whole tract on the north side. The marked line ran 'south' from the creek so as to put the whole tract on the south side. It was held that the course of the first line had been written north instead of south, by mistake, and the marked lines control. There is the same reason for holding in this case that east had been written instead of west."

In the leading case of *Reid* v. *Schenck,* 2 Dev., 415, Judge HENDERSON for the Court stated the doctrine to be : " The course and distance in a deed cannot be altered by parol evidence of any *ex post facto* transaction, *unless these transactions tend to prove the erection of monuments of boundary cotemporaneous with the execution of the deed.*" This is precisely the doctrine laid down in *Shaffer* v. *Gaynor,* 117 N. C., at p. 15, which it is now contended should be overruled.

In *Hough* v. *Horne, supra,* Judge Daniel for the Court, upon the same principle where a call was running " along

a public road " from one known corner to another, approved the instruction to the jury to adopt and locate the line with that one of two branches of a road that was the road in 1792 *when the deed was made.*

In *Baxter* v. *Wilson*, 95 N. C., 137, Justice ASHE said : " As a general rule the position contended for by the defendant is correct (viz., that the call for running with a creek must be preferred to course). But this is not an inflexible rule. It has its exceptions. For instance, where there has been a practical *location* of the land, or where it can be proved that there was a line *actually run and marked and a corner made*, such a boundary will be upheld notwithstanding a mistaken description. *Cherry* v. *Slade*, 3 Murphy, 82."

In order to avoid falling into error in a comparison of the authorities on this subject, it must be borne in mind that this is not a case, like *Powers* v. *Graybeal*, where there were two descriptions of a line, one by course and distance and another by a call for a natural object, and the question raised was whether a natural object has been so identified by the testimony as to make it higher evidence than course and distance, and to show that the conflict can be only remedied by supposing a mistake in copying the calls. The principle that applies here is the much broader one laid down in *Person* v. *Roundtree* and the cases that have followed it, that, upon satisfactory proof that the original survey was so made as to embrace a totally different tract of land from that included in the boundaries set forth in the deed, it is the province of the jury to find that the calls for course and distance were inserted in the deed by mistake, and that the true location is that which they find was made at the original survey. It is always competent to show by admissible evidence the location of a cotemporaneous, not of a subsequent survey, as was held

in *Person* v. *Roundtree*, *Hauser* v. *Belton* and *Shaffer* v. *Gaynor*, *supra*. Chief Justice PEARSON did not mean in *Graybeal* v. *Powers* to correct what he had said in *Hauser* v. *Belton*, nor to withdraw his approval of *Person* v. *Roundtree*, where the grant did not embrace one foot of the land surveyed originally, and he approved the ruling that the survey would be allowed to correct the grant *in toto* because the survey actually made at the time showed a mistake. In *Graybeal* v. *Powers*, the learned Chief Justice said on page 71 : " To allow it (a correction to be made) in this instance would be not to *correct a mistake* but to supersede a line fixed by the rules of law *by putting in its place a line marked by one of the parties, but which for some reason best known to himself he chose not to have set out in the deed.*" *Non constat* but what if this had been the line of a deed marked by the consent of parties cotemporaneously with the sale, or of a grant marked by the county surveyor when locating the warrant instead of the secret mark of a single party, Judge PEARSON would not have followed *Person* v. *Roundtree*. A line marked secretly by one of the parties in no sense tends to show what two minds concurred in buying and selling, and therefore what land was embraced by the original contract. A line marked by a single party falls under like condemnation with one which it is attempted to locate, as in *Shaffer* v. *Gaynor*, by a subsequent declaration of one of the parties only. It is incompetent because the deed cannot be corrected or contradicted by such *ex post facto* testimony, though it can by the highest evidence of the nature of the original contract, to-wit, testimony that the parties originally surveyed the line to a particular marked corner.

It would seem to be settled, if authority can put a question at rest, that a jury may depart from the words of

a grant in fixing its location. This principle seemed to Chief Justice TAYLOR to have been a rule of property when he said, in the opinion in *Loftin* v. *Heath*, 2 Haywood, 532: "I cannot say whether it was wise in the first instance to depart from the words of a grant. But many decisions of our Court have allowed of the departure in order to fix the *location* where it *really was made origi-nally.*" The head-note to the last named case is in the following language: "Any mistake or wrong description of a plat or patent may be rectified by parol testimony, and the true location of the land be proved by testimony *dehors* the patent." Of course this syllabus, taken from the opinion, was qualified by the previous proposition that the proof must tend to show where the location "really was made originally." It is scarcely conceivable that the learned Chief Justice, in an opinion rendered a few years later, should have intended, without saying so, to overrule his earlier opinion in Loftin's case by laying down the test rule, not for the location of a grant as a whole but for determining whether course and distance or a call for natural boundaries should prevail in the location of a single line. Such a construction of language, obviously referring to a different principle, seems still more strained when the fact is recalled that *Person* v. *Roundtree* and the cases that have followed it were expressly approved in the opinion.

But it was insisted that there was no evidence tending to show that the original location was different from that indicated by the courses and distances laid down in the grant, and especially that the plat attached to the grant, in connection with other testimony, was not competent as evidence of the location by an original survey different from that ascertained by running the calls of the grant. In *Hurly* v. *Morgan, supra,* Chief Justice RUFFIN said (at

page 432): " It is true that the plat *cannot control of itself* the words of the body of the grant, but it is by law annexed to the grant and always referred to therein as being annexed. When, therefore, it appears from it that the land surveyed is on the east side of the first line, *it is a circumstance, with others, from which it may be inferred that in the certificate of courses the surveyor reversed them by mistake so as to transpose the land and place it on the west side of that line.*"

In *Redmond* v. *Mulleneax* 113 N. C., 505, the Court said: " The surveyor is required by the statute (*Code*, Sec. 2769), upon receiving the entry and surveying its boundaries, to make two fair plats, one of which is to be attached to the grant when issued and the other filed in the office of the Secretary of State. The original plat is thus made *a part of the grant* for the purpose of indicating the shape and location of the boundary, and is of course *evidence*, though not conclusive, to be submitted to the jury as to the true shape and location of the land."

The controversy hinges upon the question whether a call of " west 985 poles, " indicated by the line 51–52 on the plat, used on the trial, was omitted from the grant by mistake. That call did not appear in the original grant, and on the diagram attached to the grant a line corresponding to that call was laid down and was followed by one corresponding to the next call, " south 544 poles." " A certified copy purporting to be a copy of the original survey on file in the Secretary's office " was introduced by the plaintiff, in which appeared the line, " west 985 poles." The statute (*Code*, Sec. 2769) requires that the county surveyor, upon receiving the entry and order of survey, shall make the survey as soon as may be, " and make thereof two fair plats, and shall set down in words the beginning, angles, distances, marks and water-courses and other

remarkable places crossed or touched by or near to the lines of such lands, and also the quantity of acres . . . . and he shall transmit the plats to the office of the Secretary of State or deliver them to the claimant within one year, together with the warrant of survey, one of which, with the warrant, shall be filed by the Secretary, and the other annexed to the grant." This is the only means provided by statute for informing the Secretary of State as to what are the calls of the survey to be incorporated in the grant, and it is difficult to conceive how the surveyor could record upon the plat the " angles, distances, marks and water-courses and other remarkable places crossed or touched by or near to the lines of such lands" unless it was contemplated by the law that on the side or foot of the paper containing the diagram should be written the more minute description mentioned in the statute, together with the courses and distances, all of which is to be embodied in the grant. That such is a common custom among surveyors is a matter of universal knowledge on the part of all whose business it is to be conversant with the practice in issuing grants. It must be admitted, at all events, that whether the certificate of calls for course and distance, which is the basis of the grant, be located or made by the statute a portion of the plat or not, it is certainly evidence filed with the Secretary to show what land was surveyed and intended by law to be covered by the grant issued in pursuance of the survey, and, being documentary evidence, a copy certified by the legal custodian was admissible in place of the original. *Code*, Sec. 1342. The certificate of courses and distances, being properly before the court, was certainly evidence, if it was not proof conclusive, that the Secretary made a mistake to the prejudice of the plaintiffs, and which they had a right to correct when he failed to follow the certificate of the proper officer authorized to

make the original survey, and embrace in the grant the land covered by the courses and distances set forth in his certificate, made of the original location in pursuance of the warrant. *Cooper* v. *White*, 1 Jones, 389. The purpose of the Secretary was doubtless to include the land actually surveyed, according to the certificate, as the law intended he should do. Had he done so, the place where the trespass was committed would have been embraced within the boundaries of the plaintiffs' land.

The court instructed the jury, among other things excepted to, in substance that the leading object in determining the location of deeds and grants was to ascertain the intent of the parties, which must ordinarily be determined by the description; but that where it is alleged that the description fails to express the intent of the parties on account of some mistake of the draughtsman, evidence in the shape of writings or circumstances may be considered by the jury as tending to show the mistake; and if they show it clearly, then the deed must be so construed as to express the intent of the parties by correcting it; otherwise, they would not so construe it.

The judge then called the attention of the jury to the testimony of the surveyor, Slagle, that, run according to the courses and distances laid down in the grant, the lines would cross themselves, and the last call would give out beyond the beginning corner and fail to reach Connely's creek, on which a portion of the land is said in the grant to lie, and which is indicated in the diagram introduced in evidence. On the other hand, he called the attention of the jury, as bearing upon the question of mistake, to the fact that, by running the courses and distances contained in the certified copy of the original survey, the land would be located on the waters of Connely's creek; that 10,000

acres, the number paid for, instead of 640 acres, would be embraced in the boundary, and the survey would also conform to the shape of the diagram.

While the judge did not tell the jury that "the plat of itself could control the words of the body of the grant where no alteration was made or proposed in the grant," he did follow the doctrine laid down by Chief Justice RUFFIN, in *Hurley* v. *Morgan, supra,* that "the form of the plat" was "a circumstance, with others, from which it may be inferred that there was a mistake made by the Secretary," and did not go so far as did Judge BATTLE in his opinion in *Cooper* v. *White, supra,* 389.

But this case is much stronger than that contemplated in *Hurley* v *Morgan,* as making a bare diagram competent, because it tends to show by reason of its shape that the Secretary might have been led into a mistake by the certificate of the surveyor. For here it appears as an affirmative fact that the surveyor certified the courses and distances so as to conform to the shape of the plat; and the certificate and shape of the plat, as in the case of *Cooper* v. *White, supra,* are each corroborative of the correctness of the other. The principle is in nowise affected by the dictum in *Literary Fund* v. *Clark,* 9 Ired., 58, though that case was overruled by *Campbell* v. *Branch,* 4 Jones, 313. But in the ruling in that case the language used, if understood, in no way modifies the principle stated in *Hurley* v. *Morgan* and relied upon by the plaintiffs in the case at bar, since it only reiterates the principle decided in *Hurley* v. *Morgan* that a diagram of itself cannot control the courses and distances in the body of a grant when their correctness is not questioned, but does not overrule the doctrine that its shape is a circumstance tending to show, what appears here by direct proof, that there was a mistake made in incorporating courses and distances into the grant

HIGDON *v.* RICE,

differing from those indicated by the survey and intended by law to be embodied therein. *Cooper* v. *White, supra.* His Honor properly told the jury that the plaintiffs must recover, if at all, upon the original grant, with satisfactory evidence that the mistake was made in omitting the call, " west 985 poles," as contended. For the reasons given, the judgment is affirmed.                          Affirmed.

NOTE, AVERY, J.: Since the foregoing was written, the original surveyor's certificate in the Secretary's office shows, on inspection, that it was written in the usual way, on the same paper, with and at the side and bottom of the diagram, and contains the course, " west 985 poles, " which he intended the Secretary to insert in the grant, and which the Secretary by mistake failed to embody in the calls.

MONTGOMERY, J., concurring : The point on which this case turned was whether between the parties to the suit a certified copy of the original certificate of survey attached to a land grant in the office of the Secretary of State was admissible in evidence to go to prove a mistake in a line of boundary in the original grant itself.

I concur in the opinion delivered by Justice AVERY for the Court that it was admissible for that purpose, and in the conclusion arrived at in the opinion I also concur. The learning on other points in the opinion of Justice AVERY and in that of Chief Justice FAIRCLOTH in dissent I have not felt that I was called upon to decide in this case.

FAIRCLOTH, C. J., dissenting : I cannot agree with the majority. In this case the original grant, under which the plaintiff claims, contains over 55 lines and corners, on the waters of Savannah creek, Green's creek and Connely's creek, beginning in the county line and returning to said county line at a hickory which cannot be found,

and thence to the beginning.   The grant gives the course and distance of each line, except the last one, which calls for the county line to the first corner.

The controversy arises on the course to be followed from corner No. 51, that is to say between 51 and 52 corners. Corner 51 is admitted to be a true corner.   Starting thence, the call in the grant is south 544 poles to a stake, thence 873 east 840 poles to a hickory in the county line, thence along said line to the beginning.

According to the record before us the surveyor's certificate agrees with the grant, but the plat on which the certificate is written marks a line which when run is found to be " west 985 poles " to a stake, starting from the agreed corner No. 51, that is to say from 51 to 52.

The question is, Does the grant control, or can parol evidence be heard to show that the line, " west 985 poles," drawn on the plat, is the true line?   It is admitted that if the former controls the defendant is not a trespasser as alleged, but if the latter controls then he is a trespasser. The defendant excepted to the admission of evidence tending to establish the line " west 985 poles " on the ground that such line was not called for in the original grant to Allison and Roge·s, under whom the plaintiff claimed, and because it contradicted the express calls of the grant.

Slagle, the surveyor, testified that following the calls of the grant would not reach the waters of Connely's creek and that the lines would cross each other, and that the line " west 985 " would cross Connely's creek ; also that he could not find any hickory in the county line, and that he " did not find any marked line or corners after leaving dogwood and poplar at 47;" that the calls 48 to 53 inclusive were for stakes, and that 54 called for a hickory in the county line which he could not find.   The plat has no

letters or figures to indicate course and distance.   There
was other evidence not necessary to recite.    Judgment for
plaintiff and appeal by defendant.

In the early history of our State many embarrassing
questions of boundary arose, and in their consideration
this Court laid down some rules which have been since
followed, the general rule observed being that a grant or
deed cannot be contradicted by parol testimony, to which
there are some carefully guarded exceptions.

In *Person* v. *Roundtree*, 1 Martin, 18, better reported in
1 Haywood (378), 436, the defendant entered the land,
beginning at a point on Shocco creek, and the actual sur-
vey proved on trial, and the lines run " south," &c., put-
ting the entire lot entered on the south side of the creek,
and he showed his actual possession of the same for some
time.   The grant, starting at the first station on Shocco
creek, owing to some mistake called the first line " north,"
&c., putting the lands on the north side of the creek, so
that the grant did not cover any of the land surveyed.
The Court said the mistake should not prejudice the defend-
ant, and that he was entitled to the land intended to be
granted, which had been surveyed.   And the same prin-
ciple has been followed in other cases, and in *Hauser* v.
*Belton*, 10 Ired., 358, " west " was substituted for " east "
upon competent testimony.   In many ways the course and
distance in the grant are controlled ; as, if a natural object
is called for, the distance called for in the grant or deed,
whether it falls short or goes beyond the natural object,
must yield ; and when a corner is some marked monument
or tree well marked at the time of the grant, and can be
shown by competent proof, the line must go to it, varying
the course called for in the grant as little as practicable.
In such cases the natural objects, as a stream, another's
established line, county line and the like, are allowed to

control because they are less liable to mislead than the calls of the deed, in which mistakes are more likely, owing to careless writing or copying by the surveyor or Secretary in filling up the grant from the plat or surveyor's report.

Without attempting to refer to the many cases on this question, we refer to the well-considered case of *Cherry* v. *Slade*, 3 Murphy, 82, where some rules applicable here are laid down. The fourth rule was : "Where there are no natural boundaries called for, no marked trees or corners to be found, nor the places where they once stood can be ascertained and identified by evidence, or where no lines or corners of an adjacent tract are called for, in all such cases we are of necessity confined to the courses and distances described in the patent or deed; for, however fallacious such guides may be, there are none others left for the location." P. 91. This rule is decisive of the present case. There is no call in the original grant for such a line as " west 985 " from corner 51, nor for any corner. There is no proof of such line or corner. In fact, the witness who surveyed the line says, " I did not find any marked line or corners." The plaintiff relies upon the fact that the plat attached to the grant shows such a line as " west 985." As we have said, the plat shows nothing but bare lines on the paper, with no letters or figures indicating either course or distance. However the plat annexed to a grant may in some cases aid in the interpretation of ambiguous calls, it can have no effect in this case, since it does not purport to lay down any natural course or natural object at its terminus on said line. *Literary Fund* v. *Clark*, 9 Ired., 58.

In *Graybeal* v. *Powers*, 76 N. C., 66, the Court said : " Marked line trees and corners, not called for, have been allowed to control an obvious mistake in regard to course;

for instance, a mere slip of the pen in writing 'north' instead of 'south' and the like, but you must in the language 'go by the distance' unless it be controlled by a call for a natural boundary, whether it fall short of or go beyond a tree, marked as a common tree, but which is not called for. To allow the terms of a written instrument to be varied by parol evidence is a proposition for which no lawyer will contend. The only exception is made by our courts in questions of boundary, when, there being no natural boundary called for, parol evidence corroborated by natural evidence of trees marked at the time, although not called for, is allowed to correct or explain a mistake in the courses of the grant; to allow it in this instance would be not to correct a mistake but supersede a line fixed by the rules of law by putting in its place a line marked by one of the parties, but which, for some reason best known to himself, he chose not to have set out in the grant." In that case his Honor authorized the jury to follow a line marked by one of the parties when he took out his grant, which line was inserted in the grant, and this Court held that there was error.

In *Mizell* v. *Simmons*, 79 N. C., 182, it was said: "Course and distance is a certain description in itself, and to make it yield to a 'supposed line' supported by neither deed, possession nor marked boundaries would be to make the more certain yield to the less certain and fallacious when the rule is that course and distance give way only to something which is more certain." *Redmond* v. *Stepp*, 100 N. C., 212.

Ordinarily quantity is not description, but where the boundaries are *doubtful* it may become important. There is no doubt about the boundary, according to the terms of the grant, and we have said there is no other competent evidence to show any other lines.

In *Reddick* v. *Leggett*, 3 Murphy (539), 439, it is thus stated : " I grant to J. S. one thousand acres of land and no more, bounded as follows, &c., and two thousand acres are included in the lines.   The two thousand acres pass, as the buts and bounds are more certain than quantity, which depends on admeasurement and calculation ; and the quantity is in no way material, except in lands where the boundaries are doubtful, and then it may be thrown into the one scale or the other as a circumstance."

Our conclusion then is that the bare line on the plat, with no letters or figures to indicate course and distance, unsupported by any marked trees, corner or natural boundary, and no places where they once stood can be ascertained by evidence, is not sufficient evidence to be submitted to a jury to contradict or control course and distance set out in the grant.   *Young* v. *Railroad*, 116 N. C., 932.   As the case turns upon this question, it is unnecessary to consider other exceptions.

FURCHES, J.: I concur in the dissenting opinion.