### W. C. WATFORD v. S. D. PIERCE ET AL.

(Filed 22 October, 1924.)

**1. Deeds and Conveyances—Boundaries—Description — Parol Evidence— Void Descriptions.**

While it may be shown by parol that the grantor and grantee of lands had previously gone thereon for the purpose of locating and making definite the lands to be granted, and that the deed made did not state the location within a larger acreage, the principle is not applicable when the deed has been made and the description made definite thereafter; and such may not render operative a deed that is void for indefiniteness of description therein.

**2. Same—Estoppel—Purchaser With Notice.**

Where the original owner of lands conveys a part thereof to two different purchasers, the lands of one contained within the larger boundaries of the conveyance to the other, and the owner had marked off the boundaries of the smaller tract, subsequent to the making of this deed and the grantee thereof has gone into possession and has remained therein, the original owner, and those since his death claiming as his heirs at law, are estopped to deny the boundaries of the smaller tract so as to avoid the deed for indefiniteness of the description therein, and where the purchaser of the larger tract has thereafter received his deed with knowledge of the circumstances, the estoppel applies to him also.

APPEAL by defendants from *Brown, J.,* at April Term, 1924, of BERTIE.

Action to recover land. Prior to 27 December, 1918, B. B. Robertson owned real estate known as the Ada Hardy land which contained 300 acres or more. After selling a part to S. D. Pierce and a part to W. E. Pierce and retaining 95 acres, Robertson contracted to sell the plaintiff 15 acres thereof at the price of $1,125, of which $106.25 was to be paid when the deed was delivered and the remainder in five equal installments of $202.55. Robertson delivered the plaintiff a deed containing this description: "A certain tract of No. ...... of land described and defined as follows: Lying and being in Bertie County, Colerain Township, and being a part of the Ada Hardy land, which is located and bounded by the lands of Shady Pierce and others, containing 15 acres, more or less." This deed was executed on 27 December, 1918, and registered 7 January, 1920. On the same day the plaintiff paid Robertson $106.50, and to secure the deferred payments executed and delivered to him a mortgage on the land which was registered on 24 March, 1921. The Ada Hardy farm was a well known tract, but no land was actually marked off to the plaintiff out of said farm until 1919, and after the deed and mortgage had been executed. In December, 1919, Robertson in the presence of the plaintiff Watford, D. D. Pierce, E. W. Pierce, and perhaps others laid off for the plaintiff as his 15 acres a parcel of land described as follows: "Commencing at the northeast corner of the lands of O. F. White, and of Eddie Pierce, and thence running down the line of the said Eddie Pierce lands a south course to a wooden stob placed there by Robertson, thence turning and running a straight line in a west course to another wooden stob placed there by Robertson, then running a straight line in a northern direction back to the line of O. F. White to a glazed gum tree; thence turning and running back to the line of O. F. White, to place of beginning, containing 15 acres." The plaintiff took possession of the said lands under the aforesaid boundaries, which were well understood and defined between the said Robertson and himself and remained in possession of the same until the time hereinafter stated.

In November, 1920, Robertson conveyed by deed to S. D. Pierce codefendant, all the Ada Hardy land of 95 acres, including the 15 acres claimed by the plaintiff, the description being as follows: "A certain piece of land situated, lying and being in Bertie County, North Carolina, bounded as follows: On the north by the lands of White, on the east by the lands of Edward Pierce, on the south by the land of W. Hughes, or that which was his, and on the west by the lands of Shady Pierce. Said land contains 95 acres, more or less, though it is sold in gross and

not by the acre. The land herein conveyed is known as a part of the 'Hardy Farm' located in Colerain Township, Bertie County, North Carolina."

This deed was registered 17 March, 1921, and prior to the registration of plaintiff's mortgage to Robertson.

There appears in transcript of appeal formal order at August Term, 1923, making Robert C. Bridger, administrator *c. t. a.* of B. B. Robertson, and the widow, children and legatees of B. B. Robertson, parties defendant.

The court charged the jury: "If you believe the evidence in this case you will answer the first and second issues 'Yes' and proceed to find the damages under third issue. The court instructed fully as to the measure of damages to which there was no exception by defendant."

Whereupon the following verdict was returned:

1. Is plaintiff, W. C. Watford, the owner of and entitled to the possession of the land described in the complaint? Answer: "Yes."

2. Has the defendant, S. D. Pierce, trespassed upon said land? Answer: "Yes."

3. If so, what damage is plaintiff entitled to recover therefor? Answer: "$40.00."

Judgment was given for the plaintiff's recovery of the land marked out for him in 1919.

The defendant Pierce excepted to denial of his prayers for instructions, to the charge as given, and to the judgment.

*Gillam & Davenport for plaintiff.*
*Winston & Matthews for defendants.*

ADAMS, J. This Court has stated and repeatedly approved the rule that when parties with a view to making a deed go upon the land, survey it, and actually run and mark the boundaries and thereupon execute and deliver the deed, intending to convey the land they have surveyed, the title to the surveyed land will pass to the grantee although the description in the deed may be erroneous. The ruling is aptly exemplified in the leading case of *Person v. Roundtree,* 2 N. C., 378. Roundtree entered a tract of land and ran it out as follows: "Beginning at a tree on the bank of Shocco Creek, running south .....poles to a corner, thence east...... .. poles to a corner, thence north........poles to a corner on the creek, thence up the creek to the beginning." By mistake the courses were reversed and thereby the land was placed on the side of the creek opposite that on which it was surveyed. Roundtree settled on the land that had been marked out and Person afterwards entered it and obtained a deed or grant from Earl Granville. Person then

brought ejectment, and on the trial Roundtree proved the lines of the survey and possession under his grant. It was held that the erroneous description in the grant should not prejudice the defendant and that he was entitled to the land which the parties had surveyed and intended to describe in the grant. Referring to this case after the lapse of a century the court said: "The principle that applies here is the much broader one laid down in *Person v. Roundtree* and the cases that have followed it, that upon satisfactory proof that the original survey was so made as to embrace a totally different tract of land from that included in the boundaries set forth in the deed, it is the province of the jury to find that the calls for course and distance were inserted in the deed by mistake and that the true location is that which they find was made at the original survey." *Avery, J.,* in *Higdon v. Rice,* 119 N. C., 623. The rule was adopted for the sole purpose of executing the intention of the parties at the time the deed is delivered and is sustained by a long line of decisions. *Bradford v. Hill,* 2 N. C., 22; *Cherry v. Slade,* 7 N. C., 82; *Reed v. Schenck,* 13 N. C., 415; *Baxter v. Wilson,* 95 N. C., 137; *Cox v. McGowan,* 116 N. C., 131; *Deaver v. Jones,* 119 N. C., 598; *Mitchell v. Welborn,* 149 N. C., 347; *Lance v. Rumbough,* 150 N. C., 19; *Clarke v. Aldridge,* 162 N. C., 326; *Allison v. Kenion,* 163 N. C., 582; *Lumber Co. v. Lumber Co.,* 169 N. C., 80; *Lee v. Rowe,* 172 N. C., 846; *Millikin v. Sessoms,* 173 N. C., 723; *Potter v. Bonner,* 174 N. C., 20.

There are two reasons, however, why this principle cannot avail the plaintiff. In the first place, there is a defect in the description of the land which the deed from Robertson to the plaintiff purports to convey. The land is described as "lying and being in Bertie County, Colerain Township, and being a part of the Ada Hardy land, which is located and bounded by the lands of Shady Pierce and others, containing 15 acres, more or less." It is the Ada Hardy land—the ninety-five acres—that is thus bounded. The plaintiff testified that the fifteen acres marked out for him does not adjoin the land of Shady Pierce. The deed purports to convey to the plaintiff an undefined lot of fifteen acres to be carved out of a tract containing ninety-five acres, and upon its face is void for uncertainty. *Higdon v. Howell,* 167 N. C., 455. Evidence that the lines were actually marked does not cure this defect. Parol evidence, while competent to correct a mistake, cannot validate a void description, because it would amount to a substitution by parol of an essential element of the deed which the statute of frauds requires to be in writing. *Higdon v. Rice, supra.*

In the next place, the fifteen-acre lot was "taped off and marked out" to the plaintiff twelve months after the deed had been executed. The principle upon which parol evidence is admitted to correct a mistake in the description of land is based upon the theory that the contested

grant or deed was executed in pursuance of the survey and that the marked boundaries were adopted and acted upon in making such deed or grant. *Fincannon v. Sudderth,* 140 N. C., 246; *Safret v. Hartman,* 50 N. C., 185. It follows that evidence of a survey made after the execution and delivery of the conveyance is not competent for the purpose stated. For such purpose "it is always competent to show by admissible evidence the location of a contemporaneous, not of a subsequent survey." *Higdon v. Rice, supra.* See, also, *Elliott v. Jefferson,* 133 N. C., 207, on the question of a previous survey.

It is clear, then, that the description in the plaintiff's deed is insufficient and that parol evidence of a physical survey of the fifteen-acre lot made a year after the deed was executed is not admissible for the purpose of correcting such erroneous description; but in our opinion there is another principle upon which the judgment may be upheld. It rests upon the doctrine of estoppel.

In *Barker v. R. R.,* 125 N. C., 596, the plaintiff executed and delivered to the defendant a deed containing this description: "Adjoining the lands of T. G. Barker (the plaintiff), beginning at a stake on the east side of the railroad track and on said track, and runs east 20, south 270 feet to a stake; thence north 2 west 240 feet to a stake; thence west 20 north 270 feet to a stake in the railroad track; thence south 2 east with the railroad track 240 feet to the beginning, containing 1½ acres . . . for its use as a stockyard, and other railroad purposes." The plaintiff, relying on the insufficiency of the description brought suit to recover the land, and the defendant offered evidence to prove that at the time the deed was executed the plaintiff had a surveyor to run out and locate the lot in controversy, and put the grantee in possession. The Court said: "While we have come to the conclusion that the description in itself is too vague to be located by outside evidence, it appears from the testimony that the land was in fact located by the plaintiff himself, who is thus estopped from denying his own act. Having had the lot surveyed, and placed the defendant in actual possession thereof under designated lines and marked corners, he is now bound by his own admission, and cannot be permitted to controvert the legal effect of his own conduct to the prejudice of another, especially after such long acquiescence. There is a clear distinction between cases where the parties themselves have definitely located the land and where it is merely sought to locate it by outside testimony not in the nature of admissions. We think this distinction is recognized inferentially in *Massey v. Belisle, supra,* where the Court says on page 177: 'The stakes may be real boundaries when so intended by the parties, but it is a settled rule of construction with us that when they are mentioned in a deed simply, or with no other description than that of course and distance, they are intended by the

parties, and so understood, to designate imaginary points.' If the facts are true as testified upon the trial, we think the plaintiff is clearly estopped from denying his location of the land, and therefore cannot recover." See, also, *Elliott v. Jefferson,* 133 N. C., 207, approving this decision.

In *Barker's case,* as in the one before us, the description of the land was insufficient. True, the lines were run when the deed was made, but that fact is not controlling, for the doctrine of estoppel, unlike the ruling which admits parol evidence to correct an erroneous description, is not confined to such acts or declarations as are contemporaneous with the execution of a deed. It is upon this theory that Washburn says: "To sell ten acres of land without describing any boundaries to the same would be void; but if the parties then go on and stake out that quantity of land, and the grantee takes possession of it, it ascertains the grant, and gives effect to the deed. 3 Real Prop., 435. The principle is sustained in sundry decisions. In *Simpson v. Blaisdell,* 35 A. S. R. (Me.), 348, the plaintiff claimed title to an undivided interest in a lot described as "one-half of an acre of land near the wharf and at the wharf." The defendant contended that the deed so far as it affected this lot was inoperative and void for want of a sufficient description; but the Court held otherwise, *Peters, C. J.,* saying: "Now, there were two ways in which the parties might have consummated the conveyance of the half-acre according to their intention. They could survey out the parcel from the grantor's surrounding land, and then make the deed of it, or could first make the deed and survey out, and identify the parcel afterwards. The defendant's position is that one or the other of these methods of making certain the location of the parcel was adopted. While either mode would be legitimate, the indications are that after the deed was delivered the grantor assigned a certain half-acre to the grantee, which the latter accepted; or that the grantee appropriated to himself a certain half-acre with the acquiescence of the grantor, possession and occupation following afterwards. Suppose that Hinman, after receiving his deed, had selected out a half-acre, and entirely covered it with permanent structures, or had surrounded it with a permanent fence, the structures of fence remaining to this day, and the grantee being in possession all the time, could any possible criticism defeat the title of the latter?"

In *Purinton v. R. R.,* 46 Ill., 297, the appellants bound themselves to convey to the company a right of way, eighty feet wide, across a tract of land. Some time after the execution of the agreement the apellants gave the company possession and subsequently brought ejectment to recover the land. Refusing the relief sought the Court said: "It is insisted that this contract is too indefinite and uncertain in its descrip-

tion of the land to be enforced. There might be force in this objection if it were not that the company had gone into possession and constructed their road with the permission of appellants. By letting the company into possession, the parties locate the eighty-feet strip through this piece of ground. They give a construction to the agreement, by the manner in which they have, in part, executed it. If a vendor gives a bond for the conveyance of ten acres, part of one hundred and sixty acres, or other larger tract, without any other designation of the particular portion, such a contract would no doubt be inoperative for want of certainty, nor could the purchaser or a stranger to the contract do any act by which that uncertainty could be aided or removed. But if the vendor and vendee were to select the number of acres and separate them from the remainder, and the purchaser were permitted to enter into the same, make improvements thereon, and to hold possession, the contract would thereby be so far executed as to remove the uncertainty, and a court of equity would compel the execution of a deed. By permitting the purchaser to hold possession, and to make lasting and valuable improvements, the vendor is estopped from urging the uncertainty of his obligation." See, also, *Farrar v. Cooper,* 34 Me., 394; *Armstrong v. Mudd,* 50 A. D., 545, and note citing several cases; *Patterson v. Palterson,* 27 S. W. (Tex.), 837.

It appears, then, from our own decisions and those of other States that the devisees of Robertson are estopped to deny the plaintiff's title; and the remaining question is whether the estoppel affects the alleged title of the defendant Pierce. In discussing a similar question, in *Simpson v. Blaisdell, supra,* the Court said: "The question presented here is to be considered precisely as it might have been had it arisen between the original parties to the deed, inasmuch as the present parties make their claims respectively by inheritance through and under him." And in *Dudley v. Jeffress,* 178 N. C., 111, the doctrine is upheld as to those in privity with the original parties. "Privity," it is there said, "exists between two successive holders when the later takes under the earlier, as by descent or by will, grant, or voluntary transfer or possession. . . . . He who is in privity stands in the shoes or sits in the seat of the owner from whom he derives his title, and thus takes it with the burden attending it." It was also said: "The plaintiff Dudley, having bought and taken the deed with knowledge that the line as claimed by the defendant had been settled and marked on the ground by a fence and a line of chopped trees to the river, and that the parties, since said partition, including those under whom he claims, had recognized and held up to that line, cannot go beyond that boundary by reason of any error of the parties in drawing the deed not in conformity to said line."

Upon this principle we think the defendant Pierce is estopped equally with his grantor. The plaintiff and two others contracted to purchase different parts of the tract containing 95 acres. When the deeds were executed, the purchasers went into possession of the entire tract; and, afterwards, when the plaintiff's lot was set apart by metes and bounds, he went into possession of the .15-acre lot. The defendant Pierce attended the survey and saw the lines run. He knew their location. After the plaintiff's deed had been registered, and after he had gone into possession of the land, the defendant, with full knowledge of the plaintiff's deed, boundaries, and possession, received his deed from Robertson, and "stands in his shoes and sits in his seat."

The defendant Robertson filed an answer, admitting the plaintiff's title; and while the defendant Pierce alleged that he was an innocent purchaser for value, we find nothing in the record to support his allegations. In fact, he introduced no evidence.

After a careful examination of the record and the authorities, we find No error.